OPINION OF THE COURT
W. Dennis Duggan, J.
In this paternity proceeding the petitioner (DSS) moves for summary judgment on its paternity petition on the grounds that there exists no triable issue of fact. The issue to be first determined is whether summary judgment, as a procedural device, is available in a paternity action.
The paternity petition filed by DSS alleges that the respondent is the father of Baby T. Upon request of respondent, two separate blood tests were conducted. The first, an HLA test, resulted in the finding of probability of paternity of 99.93%. The second, a DNA blood test, resulted in the finding of a probability of paternity of 99.99%.
Based on these blood tests, the affidavit of the moving attorney, and the mother’s affidavit, the mother now moves for summary judgment. Also submitted in support of the motion is the affidavit of the mother’s ex-husband. The end of the mother’s marriage overlapped the possible time of conception by approximately 30 days. The ex-husband, in his affidavit, established nonaccess.
In opposition to the motion respondent raises only two issues. The first is that the mother’s ex-husband was not made party to the proceeding. The second is that the presumption of *508 legitimacy has not been overcome because the blood tests do not conclusively establish paternity. Respondent makes no fact-based claim that the ex-husband is the father. Neither does he allege that the two blood tests were administered or interpreted improperly. Finally, respondent, in his responding papers, does not specifically deny paternity.
There is no express provision for a summary judgment motion in the Family Court Act. When the Family Court Act is silent on a procedural question "the provisions of the civil practice law and rules shall apply to the extent that they are appropriate to the proceedings involved” (see, Family Ct Act § 165; Matter of Suffolk County Dept. of Social Servs. [Michael V.] v James M., 83 NY2d 178, 182). In James M., the Court of Appeals specifically approved the use of a summary judgment motion in a Family Court Act article 10 proceeding. In that case, the Court found that a criminal conviction for sodomy collaterally estopped the respondent from contesting an abuse petition in Family Court. Summary judgment was granted based on the certificate of conviction. Nothing in James M. argues for restricting the use of summary judgment to the particular situation raised in that case. Accordingly, a motion for summary judgment is available in a paternity action to the extent it is "appropriate” to the nature of that particular proceeding.
A procedure contained in the CPLR is appropriate and, hence, importable into the Family Court Act, if it assists in defining "the conditions on which the family court may intervene in the life of a child, parent and spouse” (Family Ct Act § 141). In most cases, the appropriateness issue can be resolved by answering the question of whether there is any reason why a particular CPLR procedure ought not be used. For the reasons given below, the court finds that there is no reason why summary judgment is not appropriate in a paternity proceeding.
The first question is whether summary judgment is inappropriate in a paternity action because of the heightened standard of proof. In a Family Court Act article 5 proceeding, proof of paternity must be shown by clear and convincing evidence (see, Matter of Kimiecik [Tammie QQ.]v Mark RR., 86 AD2d 953). A summary judgment motion will be granted "if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party” (CPLR 3212 [b]). Underlying this rule is the notion that summary *509 judgment "does not deny the parties a trial; it merely ascertains that there is nothing to try” (Siegel, NY Prac § 278, at 407 [2d ed]).
Because a summary judgment motion determines that there are no material facts in dispute, the quantum of proof required to prove the underlying action is irrelevant. For example, there is no theoretical or logical reason why a summary judgment motion could not be applied to a case that requires proof beyond a reasonable doubt. For obvious constitutional and public policy reasons, summary judgment may not be used to resolve a criminal case. However, these constitutional and public policy considerations have not been extended to civil practice.[1] The court’s task on a summary judgment motion is, of course, issue finding. While this search may be more exacting where the underlying action’s standard of proof is higher than the customary preponderance of the evidence, there is no inherent reason why a motion for summary judgment should not be available in a proceeding where the standard of proof is clear and convincing evidence. Accordingly, there is nothing about the higher standard of proof required in a paternity proceeding which makes a summary judgment motion inappropriate.
The second issue raised by the respondent is that the presumption of legitimacy cannot be rebutted in a summary judgment motion. Of course, the classic statement on the legitimacy presumption is that of Chief Judge Cardozo in Matter of Findlay (253 NY 1): "Potent, indeed, the presumption is, one of the strongest and most persuasive known to the law * * * and yet subject to the sway of reason” (supra, at 7 [citations omitted]). Cardozo noted that English law once allowed a "rule of the four seas”; namely, that if a husband was within the four seas of England during the period of gestation, paternity could not be questioned. While the rule of the four seas gave way to other more legalistic formulations of the quantum of proof required in paternity actions, such as "strong and irresistible”, "beyond all reasonable doubt” and "clear and convincing”, Cardozo noted that they meant only this: "the presumption will not fail unless common sense and reason are outraged by a holding that it abides” (supra, at 8). By making the presump *510 tion of legitimacy "one of the strongest and most persuasive known to the law”, society was obviously advancing some very important public policy interests and the law was recognizing some acute evidentiary problems (supra, at 7). Prior to the advent of the HLA and DNA genetic marker tests, blood testing was a hit or miss proposition on the issue of paternity.[2] As a statement of public policy, "bastardizing” a child carried with it some severe civil and criminal consequences, as well as an indelible mark of public shame. The concept of shame attaching to an unwed pregnancy has now become a quaint notion. Having or being a bastard now has few, if any, legal consequences.
The presumption of legitimacy, being rebuttable, has been overwhelmingly rebutted in this case (see, Matter of Jeanne C. v Peter W.D., 134 AD2d 779). In this case, the unchallenged accuracy of the blood tests, the unchallenged affidavit of nonaccess by the mother’s ex-husband and the respondent’s failure to dispute any issue of fact, adequately rebuts the presumption of legitimacy. While it is often stated in appellate opinions that blood grouping tests results are not conclusive as to paternity, this says no more than that blood tests do not prove paternity beyond all doubt (see, Matter of Donald I. v Teresa K., 221 AD2d 862). They are, however, closely approaching that standard. Family Court Act § 532 provides that "[i]f the results of any such blood genetic marker or DNA test or tests indicate at least a ninety-five percent probability of paternity, the admission of such record or report shall create a rebuttable presumption of paternity, and shall establish, if unrebutted, the paternity of and liability for the support of a child pursuant to this article and article four of this act.” It is *511 now the policy of blood testing laboratories to increase the testing levels until a probability of paternity of at least 99% is reached.
The presumption of legitimacy having been rebutted in this case, the court finds that there remains no issue of fact to be tried. Respondent argues that the results of blood grouping tests are not conclusive as to paternity unless tested in a fact-finding hearing. However, respondent has offered no proof that would tend to rebut the presumption of paternity established under section 532 of the Family Court Act, nor has he challenged the validity of the blood test in any way. Respondent has offered no proof, nor even alleged, that the tests conducted in this case were done improperly or were otherwise flawed in the conclusions reached. Additionally, respondent, in his responding papers, never specifically denied that he was the father of the child and so we are left with only his formalistic denial entered at the time of arraignment. The respondent’s generalized conclusory allegations are insufficient to raise a question of fact in the face of the proof offered by the petitioner.
Respondent’s claim that summary judgment should not be granted because the ex-husband was not made a party to this proceeding is unavailing. The ex-husband was given notice of the proceeding and his affidavit of nonaccess is an appropriate addition to the mother’s other proof offered to rebut the presumption of legitimacy. There is no requirement that he be made a party by the petitioner when the respondent has procedural devices available to him to add the ex-husband as a party and declined to do so. This case is quite different from the factual situation presented in Matter of Richard W. v Roberta Y. (212 AD2d 89) where the Court required a husband to be joined as a party. In Richard W., the husband had been a substantial presence in the child’s life and desired to continue parental rights. The husband in this case has no such history and expresses no desire to establish a relationship with the child. Additionally, the husband, by filing a response, has become the functional equivalent of a party.
Accordingly, the court finds that there is no triable issue of fact and the motion for summary judgment will be granted.

. For example, in both a criminal and paternity action the defendant cannot be compelled to testify. The difference, of course, is that in a criminal action no adverse inference can be drawn from a failure to testify. There is no such restriction in a civil action (see, Family Ct Act § 531; CPL 300.10 [2]; Fitzgerald v Tamola, 199 AD2d 122; cf., Matter of Doe v Roe, 56 Misc 2d 18).

. Identification by blood could not even be contemplated until 1901. In that year, Austrian pathologist Karl Landsteiner discovered the primary blood types of A, B, AB and 0 and that those types were transmitted by the principles of Mendelian heredity. ABO typing could exclude a falsely accused putative father only about 14% of the time. In 1927, Landsteiner discovered M and N agglutinogens and exclusions became possible in about 33% of men falsely accused. In 1940, Landsteiner’s discovery of the Rh factors pushed this to about 55%, but still little better than the odds of a coin toss with respect to the probability of paternity. It was not until the late 1970’s, when HLA tests, combined with red cell antigen and serum protein-red cell enzyme tests, could give probabilities of paternity greater than 99%. Such probability evidence was not admissible in New York until 1981. In short, it is science that has made summary judgments appropriate in paternity actions (see, Keefe and Failey, A Trial of Bastardy is a Trial of The Blood, 34 Cornell L Q 72 [1948]; 1 Schatkin, Disputed Paternity Proceedings § 3.09 [4th rev ed]; L 1981, ch 9, § 2).